1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | Case No. 11-CR-00595-LHK |
|---|---|
| Plaintiff, | Case No. 11-CR-00596-LHK-2 |
| v. | **ORDER DENYING COMPASSIONATE RELEASE** |
| ADRIAN GAMINO, | Dkt. Nos. 51, 81 |
| Defendant. | |

Defendant Adrian Gamino ("Defendant") is currently in the custody of the Bureau of Prisons ("BOP") and incarcerated at the U.S. Penitentiary Thomson ("USP Thomson"). Defendant filed the identical motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), also known as compassionate release, in each of his two cases.  ECF No. 51 in 11-CR-00595-LHK; ECF No. 81 in 11-CR-00596-LHK-2 ("Mot.").[1]  In the instant motions, Defendant also argues that his sentence should be modified based on the First Step Act's effect on

---

[1] On August 29, 2019, this Court denied Defendant's motion for a reduction of sentence based on the First Step Act's effect on Defendant's criminal offense level.  ECF No. 46 in 11-CR-00595-LHK; ECF No. 76 in 11-CR-00596-LHK-2.  Defendant also has a pending motion to vacate his sentence under 28 U.S.C. § 2255.  ECF No. 36 in 11-CR-00595-LHK; ECF No. 67 in 11-CR-00596-LHK-2.

1

1    Defendant's prior state convictions.  Mot. at 2-4.  The Court will rule on the prior state convictions

2    issue in a separate order.  The instant order solely addresses Defendant's motions for

3    compassionate release.

4        The government opposes Defendant's motions for compassionate release.  ECF No. 52 in

5    11-CR-00595-LHK; ECF No. 82 in 11-CR-00596-LHK-2 ("Opp'n.").  The United States

6    Probation office denied Defendant's release plan.  ECF No. 53 in 11-CR-00595-LHK; ECF No. 83

7    in 11-CR-00596-LHK-2.  For the reasons set forth below, the Court DENIES Defendant's motions

8    for compassionate release.

9    **I.    LEGAL STANDARD**

10        18 U.S.C. § 3582(c) allows a court to modify a defendant's "term of imprisonment . . .

11   upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant."  A

12   defendant may bring a § 3582(c) motion after he has "fully exhausted all administrative rights to

13   appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of

14   30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

15   earlier." 18 U.S.C. § 3582(c)(1)(A).

16        The statute governing motions for sentence reductions, 18 U.S.C. § 3581(c)(1)(A), requires

17   that courts "consider[] the factors set forth in section 3553(a)." Those factors include, among other

18   things, the nature and circumstances of the offense and the history and characteristics of the

19   defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote

20   respect for the law, to provide just punishment for the offense, to afford adequate deterrence to

21   criminal conduct, to protect the public from further crimes of the defendant, and to provide the

22   defendant with needed medical care in the most effective manner; and the need to avoid

23   unwarranted sentence disparities among defendants with similar records who have been found

24   guilty of similar conduct. 18 U.S.C. § 3553(a).

25        "[A]fter considering the factors set forth in § 3553(a) to the extent applicable," a court may

26   grant the motion to reduce the defendant's sentence in two circumstances.  As relevant here, a

27   court may reduce a defendant's sentence if it finds "extraordinary and compelling reasons warrant

28

2

1    such a reduction" and that "such a reduction is consistent with applicable policy statements issued

2    by the Sentencing Commission." *Id*. § 3582(c)(1)(A).  The relevant Sentencing Commission

3    policy statement enumerates several "extraordinary and compelling reasons."  U.S. Sentencing

4    Guidelines ("U.S.S.G") § 1B1.13(1)(A) & cmt. 1.  A defendant fulfills one of the enumerated

5    reasons when the defendant is "suffering from a serious physical or medical condition . . . that

6    substantially diminishes the ability of the defendant to provide self-care within the environment of

7    a correctional facility and from which he or she is not expected to recover." *Id*. § 1B1.13 cmt.

8    1(A)(ii).  The Commission also requires that the defendant not pose a danger to the safety of the

9    community. *Id*. § 1B1.13(2).

10   ## II.      DISCUSSION

11           In analyzing whether a defendant is entitled to compassionate release under 18 U.S.C.

12   § 3582(c)(1)(A)(i), courts determine whether a defendant has satisfied three requirements.  First, a

13   defendant must exhaust his administrative remedies.  Second, a defendant must establish that the

14   § 3553(a) sentencing factors "are consistent with" granting a motion for compassionate release.

15   *United States v. Trent*, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020).  Third, a defendant

16   must demonstrate that "extraordinary and compelling reasons"—as defined by the applicable

17   Sentencing Commission policy statement—"warrant . . . a reduction." 18 U.S.C.

18   § 3582(c)(1)(A)(i).

19           Here, the government concedes that Defendant has exhausted his administrative remedies

20   and therefore satisfies the first requirement under Section 3582.  Opp'n at 2.  Thus, only the

21   second two requirements are at issue in the instant case.

22           **A.  Defendant fails to demonstrate extraordinary and compelling reasons justifying
           compassionate release.**

23           At the time of Defendant's sentencing on March 7, 2012, Defendant was 31 years old.

24   Presentence Investigation Report ("PSR") ¶ 64, ECF No. 55 in 11-CR-00595-LHK; ECF No. 85 in

25   11-CR-00596-LHK-2.  Defendant reported a rotator cuff injury, which did not require treatment,

26   and a hernia above his left testicle, but otherwise indicated that he was in good physical health and

27

28

United States District Court
Northern District of California

3

1  did not report a history of mental or emotional health problems.  *Id.* ¶¶ 64-65.

2      Defendant's current age of 40 does not place him in a high-risk age group for severe

3  COVID-19 illness, and Defendant does not contend otherwise.  Mot.  In fact, the Centers for

4  Disease Control ("CDC") state that the risk of getting severely ill from COVID-19 increases with

5  age: "For example, people in their 50s are at higher risk for severe illness than people in their 40s.

6  Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in

7  their 50s.  The greatest risk for severe illness from COVID-19 is among those aged 85 or older."

8  *See Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

9  precautions/older-adults.html (last visited April 14, 2021).  Indeed, "8 out of 10 COVID-19 deaths

10  reported in the U.S. have been in adults 65 years old and older."  *Id.*

11      In his motions for compassionate release, Defendant does not identify any health issues or

12  underlying conditions which increase or may increase Defendant's risk of serious illness or death

13  from COVID-19.  ECF No. 51 in 11-CR-00595-LHK; ECF No. 81 in 11-CR-00596-LHK-2. The

14  government includes Defendant's BOP medical records dated 2019 through 2020 in its opposition

15  to Defendant's motion.  Opp'n Exh. 1, Exh. 2.  Defendant's BOP medical records indicate that

16  Defendant has been diagnosed with hypertension.  *Id.*  The Court notes that the CDC identifies

17  hypertension as a medical condition which may increase a person's risk of severe illness from

18  COVID-19.  *See People with Certain Medical Conditions*, CDC,

19  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

20  conditions.html (last visited April 14, 2021).  However, it appears that Defendant's hypertension is

21  well-controlled in custody, and Defendant does not require medication for this condition.  Opp'n

22  Exh. 1, Exh. 2.

23      Furthermore, Defendant has been repeatedly tested for COVID-19 while in custody.

24  Specifically, Defendant was tested for COVID-19 on July 30, 2020, August 14, 2020, August 25,

25  2020, and September 9, 2020, and received a negative test result each time. Opp'n Exh. 2 at 31,

26  35, 38, and 41.  USP Thomson is currently receiving allocations of the COVID-19 vaccine and

27  administering the vaccine to willing staff members and inmates.  *See*

28
Case Nos. 11-CR-00595-LHK; 11-CR-00596-LHK-2
ORDER DENYING COMPASSIONATE RELEASE

United States District Court
Northern District of California

https://www.bop.gov/coronavirus/ (last accessed April 16, 2021). As of the date of this order, 192 staff members and 98 inmates at USP Thomson have completed their full COVID-19 inoculations. *Id.*

Defendant, who is 40 years old, did not identify any health issues or underlying conditions that increase or may increase his risk of serious illness from COVID-19, and is housed at a BOP facility that is administering the COVID-19 vaccine to willing staff members and inmates, has failed to demonstrate extraordinary and compelling reasons justifying compassionate release.

**B.  The Section 3553(a) factors do not warrant sentence reduction in the instant case.**

The Court also denies Defendant's motion for compassionate release for another independent reason: "the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). Those factors include, among other things, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed medical care in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Between April 21, 2011 and June 1, 2011, Defendant sold methamphetamine four times and cocaine twice to an undercover law enforcement agent. PSR ¶¶ 7-19. The purity of Defendant's methamphetamine was 100% on two occasions, 99.9% on one occasion, and 96.4% on another occasion. *Id*. ¶¶ 11, 12, 16, 19. Defendant delivered to the undercover law enforcement agent 148.9 grams of actual methamphetamine and 6.9 grams of cocaine. *Id*. ¶21. When Defendant was arrested on August 24, 2011, Defendant possessed 327.21 grams of methamphetamine, 3.16 grams of cocaine, 23 grams of marijuana, a scale, plastic baggies, and $4,862 in U.S. currency. *Id*. ¶ 20.

On December 11, 2011, Defendant pleaded guilty in Case No. 11-CR-00595-LHK to one count of possession with intent to distribute and distribution of more than 50 grams of

Case Nos. 11-CR-00595-LHK; 11-CR-00596-LHK-2
ORDER DENYING COMPASSIONATE RELEASE

United States District Court
Northern District of California

1   methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(viii).  *See* Minute Entry

2   from Change of Plea Hearing, ECF No. 17; Indictment, ECF No. 1; Plea Agreement, ECF No. 16.

3   This count carries a ten-year mandatory minimum sentence by statute.  Plea Agreement, ECF No.

4   16.

5         On December 11, 2011, Defendant pleaded guilty in Case No. 11-CR-00596 to one count

6   of conspiracy to possess with intent to distribute and distribution of 5 grams or more of

7   methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(viii); and one

8   count of possession with intent to distribute and distribution of 5 grams or more of

9   methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(viii).  *See* Minute Entry

10  from Change of Plea Hearing, ECF No. 17; Indictment, ECF No. 1; Plea Agreement, ECF No. 16.

11        Because of Defendant's criminal history discussed below, Defendant qualified as a career

12  offender at the time of sentencing.  Accordingly, Defendant's United States Sentencing Guidelines

13  range was 262 to 327 months. PSR ¶ 74.  Defendant agreed in a Federal Rule of Criminal

14  Procedure 11(c)(1)(C) binding plea agreement that Defendant should be sentenced to 240 months

15  imprisonment followed by ten years of supervised release.  Plea Agreements, ECF No. 16 at 6 in

16  11-CR-00595-LHK; ECF No. 16 at 6 in 11-CR-00596-LHK-2.  On March 7, 2012, the Court

17  imposed the sentence to which the parties stipulated.  Judgments, ECF No. 23 in 11-CR-00595-

18  LHK; ECF No. 26 in 11-CR-00596-LHK-2.

19        Defendant has been in federal custody since October 13, 2011, which is 9 years and 6

20  months.  PSR ¶ 6.  If Defendant qualifies for good time credits, Defendant's projected release date

21  is December 29, 2028.  *See* Federal Bureau of Prisons, *Find an Inmate*,

22  https://www.bop.gov/inmateloc/ (last visited April 16, 2021).

23        However, it is not clear that Defendant will qualify for good time credits because

24  Defendant has violated prison rules while in custody.  For example, on November 4, 2018, a BOP

25  officer saw Defendant remove a plastic baggie from his pocket and place it in his mouth.  Opp'n

26  Exh. 6.  The plastic baggie contained thin strips of paper that were soaked in a synthetic

27  cannabinoid.  *Id*.  On September 17, 2019, a BOP officer discovered a homemade weapon in

28  Case Nos. 11-CR-00595-LHK; 11-CR-00596-LHK-2
ORDER DENYING COMPASSIONATE RELEASE

United States District Court
Northern District of California

1  Defendant's cell.  Opp'n Exh. 5.  The homemade weapon was a toothbrush which had been

2  sharpened to a point.  *Id.*  Defendant admitted to possession of the weapon.  *Id.*

3        Thus, even assuming that Defendant qualifies for good time credits, Defendant's motion

4  requests that he be released over seven years early and before Defendant has served the ten-year

5  mandatory minimum term of imprisonment.

6        The Third and Fifth Circuits have held that district courts may consider the length of time

7  remaining on a defendant's sentence when determining whether to grant compassionate release.

8  *See United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020) (holding that a district court

9  did not abuse its discretion in denying compassionate release based on the defendant's having

10  served only 19 months of a 180 month sentence); *United States v. Chambliss*, 948 F.3d 691, 694

11  (5th Cir. 2020) (holding that a district court did not abuse its discretion in denying compassionate

12  release based, in part, on the defendant's having served only 14 years of a 30 year sentence).

13  Moreover, United States District Judge Jon Tigar of the Northern District of California concluded

14  that permitting compassionate release for a defendant who "has served only roughly 20 percent of

15  his sentence . . . would not satisfy 'the need for the sentence imposed to reflect the seriousness of

16  the offense, to promote respect for the law, and to provide just punishment for the offense.'  Nor

17  would it 'afford adequate deterrence to criminal conduct' or adequately 'protect the public from

18  further crimes of the defendant.'"  *United States v. Furaha*, 445 F. Supp. 3d 99, 103 (N.D. Cal.

19  2020) (citation omitted) (original ellipses omitted) (quoting 18 U.S.C. § 3553(a)(2)(A)-(C)).

20  United States District Judge Richard Seeborg of the Northern District of California has likewise

21  held that, "[t]he length of the sentence remaining is an additional factor to consider in any

22  compassionate release analysis," with a longer remaining sentence weighing against granting any

23  such motion.  *United States v. Connell*, No. 18-CR-00281-RS-1, 2020 WL 2315858, at *6 (N.D.

24  Cal. May 8, 2020).

25        Moreover, Defendant has an extensive history of drug trafficking, violent conduct, fugitive

26  status, and noncompliance with supervision.  For example, for over one year, starting in July 1996,

27  there was a bench warrant for Defendant's arrest for a theft offense.  PSR ¶ 41.  In August 1997,

28

7

1    Defendant, who was 17 years old, was arrested on a property that contained a methamphetamine

2    laboratory.  *Id.*  After Defendant served time in juvenile hall, he was to serve home detention with

3    electronic monitoring.  *Id.*  After a week of home detention, Defendant removed his ankle monitor,

4    which resulted in the issuance of another bench warrant.  *Id.*  Two days later Defendant was taken

5    into custody after discharging a weapon.  *Id.*

6         While on fugitive status for the theft offense, Defendant had participated in a gang-related

7    shooting and thus committed an assault with a deadly weapon.  *Id.* ¶ 42.  After being committed to

8    a juvenile ranch, Defendant was placed on home release and allowed to return to his mother's

9    residence.  *Id.*  However, the day he was released, Defendant left his mother's home without

10   permission, and his mother called the authorities.  *Id.*  Defendant was then a fugitive for nearly

11   five months, during which he became an adult.  *Id.*  After Defendant was arrested in October 1998,

12   Defendant, who was 18 years old, was convicted of escape.  *Id.* ¶ 43.

13        At the time of Defendant's October 1998 arrest, police officers found a revolver wrapped

14   in a red bandana, ammunition, and items depicting gang membership in Defendant's room and a

15   .22 caliber pistol in Defendant's jacket.  *Id.*  Defendant thus was convicted of possession of a

16   firearm by a specified person in February 1999.  *Id.* ¶ 44.  His two year state prison sentence was

17   suspended, and he was ordered to serve 90 days in county jail.  *Id.*

18        None of this criminal conduct from 1996 through 1999 was included in calculating

19   Defendant's criminal history category or determining that Defendant was a career offender at the

20   time of sentencing.  *Id.* ¶¶ 41-44.

21        In October 2000, at age 20, Defendant was convicted of felony possession of

22   methamphetamine and being under the influence of methamphetamine misdemeanor on July 9,

23   2000 (hereafter "July 2000 methamphetamine offenses").  *Id.* ¶ 45.  Defendant was sentenced to

24   two years in state prison.  *Id.*  Defendant's parole was revoked three times for parole violations.

25   *Id.*

26        After Defendant was released on bail on July 9, 2000 for the July 2000 methamphetamine

27   offenses, Defendant's mother witnessed Defendant punch Defendant's partner, who was the

28

United States District Court
Northern District of California

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

mother of Defendant's one year old daughter, in the eye, and reported the incident to Defendant's partner's mother, who reported the incident to the police. *Id.* ¶ 46. The victim had a red and purple bruise approximately 3 inches in diameter around her right eye. *Id.* The swelling was such that the victim's right eyelids were opened approximately half the size of her left eyelids. *Id.* The victim refused medical treatment and claimed Defendant did not strike her, though she did not explain how the eye was injured. *Id.* Defendant was convicted of inflicting corporal injury on the mother of his child and sentenced to 90 days in county jail. *Id.*

In 2002, Defendant was convicted of being under the influence of a controlled substance. *Id.* ¶ 47. Defendant committed this offense while he was on parole for the July 2000 methamphetamine offenses. *Id.* ¶ 45.

In 2003, Defendant's residence was searched by law enforcement following a confidential informant's tip that Defendant was selling meth from his apartment. *Id.* ¶ 48. Agents seized approximately 419.85 grams of methamphetamine, approximately 100.15 grams of marijuana, two handguns, three scales, two vacuum sealers, twelve .38 caliber bullets, and approximately 24 suspected stolen items from the apartment. *Id.* Defendant was convicted of felony possession for sale of methamphetamine, felony possession for sale of marijuana, possession of a firearm by a felon, and buying, receiving, concealing, or withholding stolen property, for which he was sentenced to three years in state prison. *Id.* Defendant's parole was revoked twice for parole violations. *Id.* Moreover, Defendant committed these 2003 offenses while Defendant was on parole for the July 2000 methamphetamine offenses. *Id.* ¶ 45.

In 2005, Defendant was convicted of felony possession for sale of methamphetamine and resisting arrest, for which he was sentenced to four years and four months in state prison. *Id.* ¶ 49. Defendant's parole was revoked once for parole violations. Moreover, Defendant committed these 2005 offenses while he was on parole for the July 2000 methamphetamine offenses and the 2003 offenses. *Id.* ¶ 45, 48.

In 2008, Defendant was convicted of driving under the influence with a blood alcohol content above 0.08%. *Id.* ¶ 50. Defendant committed this offense while he was on parole for the

9

1    2003 offenses and the 2005 offenses.  *Id.* ¶ 48, 49.

2         Pursuant to United States Sentencing Guidelines Section 4B1.1(a), because Defendant was

3    at least 18 years old at the time of the instant controlled substance felony offense, and Defendant

4    had at least two prior felony controlled substance convictions, Defendant qualified as a career

5    offender at the time of sentencing.  *Id.* ¶ 51.

6         Defendant has a longstanding pattern of noncompliance with the law.  Defendant's

7    multiple drug trafficking and firearm convictions, convictions for violence, escapes, violations of

8    parole, and violations of the rules in prison persuade the Court that Defendant is a danger to the

9    community.

10        Furthermore, Defendant's consistent unwillingness to follow rules does not give this Court

11   confidence that, if released, Defendant would adhere to current public health restrictions to protect

12   himself and others from the spread of COVID-19.  Defendant's proposed release plan is to reside

13   with his sister in Fresno, California.  United States Probation Office Responses, ECF No. 53 in 11-

14   CR-00595-LHK; ECF No. 83 in 11-CR-00596-LHK-2.  However, the United States Probation

15   Office denied Defendant's release plan as the Probation Office was not able to get in contact with

16   Defendant's sister, despite multiple attempts on multiple days by telephone and visits to

17   Defendant's sister's home, even when there were vehicles at the residence.  *Id.*  Without a stable

18   residence, it would be challenging for Defendant to practice social distancing and otherwise

19   adhere to current public health restrictions to protect himself and others from COVID-19.

20        Given all of the above, the Court finds that granting Defendant's motion for compassionate

21   release would not reflect the seriousness of the offense, promote respect for the law, provide just

22   punishment for the offense, afford adequate deterrence to criminal conduct, or avoid unwarranted

23   sentence disparities among defendants with similar records who have been found guilty of similar

24   conduct as required by 18 U.S.C. § 3553(a).

25   **IV.   CONCLUSION**

26        For the foregoing reasons, the Court DENIES Defendant's motion for compassionate

27   release.

28                                             10

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: April 19, 2021

_____

LUCY H. KOH
United States District Judge

Case Nos. 11-CR-00595-LHK; 11-CR-00596-LHK-2
ORDER DENYING COMPASSIONATE RELEASE